UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PHIL CANDEE                                                                          Plaintiff

v.                                                     Civil Action No. 3:16-CV-00462-RGJ-CHL

NANCY A. BERRYHILL, ACTING                                                          Defendant
COMMISSIONER SOCIAL SECURITY
ADMINISTRATION

* * * * *

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Nancy A. Berryhill's, Acting Commissioner, Social Security Administration ("SSA") Motion for Summary Judgment [DE 46]. Plaintiff Phil Candee ("Candee") responded [DE 52], and the SSA submitted a Reply [DE 53]. This matter is ripe. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the SSA's Motion [DE 46].

### I.      FACTUAL AND PROCEDURAL BACKGROUND

The SSA has employed Candee as a Claims Specialist[1] since 1993. [DE 52, Candee Resp. to MSJ, at 361]. Candee was born in 1963. [*Id.*]. Most of this time Candee worked out of the New Albany, Indiana office. [*Id.* at 362]. A Claims Specialist adjudicates Social Security claims and decides whether claimants meet entitlement requirements for retirement, disability, and survivor's claims. [DE 46, SSA MSJ, at 128].

The New Albany office processes Social Security Act claims related to Title II benefits, 42 U.S.C. § 401 *et seq.,* and Title XVI benefits, 42 U.S.C. § 1381 *et seq.* [DE 46, at 128]. Title II is an insurance program that provides old-age, survivor, and disability benefits to insured individuals

---

[1] A "Claims Specialist" was formerly called "Claims Representative." [DE 52 at 357].

irrespective of financial need.  *See* 42 U.S.C. §§ 403, 423 (1982 ed. and Supp. III).  Title XVI is a welfare program that provides supplemental security income ("SSI") benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status.  *See* 42 U.S.C. § 1382(a) (1982 ed. and Supp. III); [DE 46 at 128, citing Candee Depo. at p. 17].  During his employment with SSA, Candee has specialized in Title II.  [*Id.*, citing Candee Depo. at pp. 34, 42-46].

In 2010, Kenneth Corder ("Corder") became Candee's District Manager.  [DE 52 at 362, citing Candee Depo. at 34].  In 2011, Corder approved Candee's Individual Development Plan ("IDP"), which stated his short range goal was promotion to Technical Expert ("TE") and that he wanted to receive training in Title XVI.  [*Id.*]

In 2012, Candee, as union steward, assisted co-worker Judy Washington ("Washington") in her discrimination claim before the EEO.  [DE 46 at 362, citing Candee Depo. at 79–81].  Washington was in her sixties and claimed she was not selected for the position of Claims Specialist by Corder because of her age, race, and gender.  [DE 52 at 262].  The claim concluded in May 2014.

**2012**

In August 2012, Candee contends that he lost an opportunity to expand his resume when his then-supervisor, Jennifer Bush ("Bush"), assigned work to Rachel LaCoste ("LaCoste") and Lindsey Chitwood to make personal conference overpayment/waiver decisions and then identified them as having volunteered for the work.  [DE 52 at 363, citing Candee Decl.¶ 6].  Candee claims Bush explained to him that she believed Candee had no experience in this area, which he disputes.  [*Id.*]

**2014**

In February 2014, Candee testified at Washington's EEO hearing. [*Id.*] Candee's participation in Washington's EEO claim was known to Corder. [*Id.*] The EEO issued a final decision on Washington's claim in May 2014.

On August 5, 2014, Candee applied for a TE position (the "2014 TE position"). [DE 52 at 363]. On September 27, 2014, Candee then alleges that he learned other employees received mentorship opportunities not offered to him. [*Id.*, citing Candee Decl. ¶ 7]. This included LaCoste, who was under age 40, and who also applied for the 2014 TE position. [*Id.*]

On September 30, 2014, Corder informed Candee that Beth Berry ("Berry") was selected for the 2014 TE position and that Berry was selected because she had been on more details and had more experience. [DE 52 at 363, citing Candee Depo. at 40; Candee Decl. ¶ 8]. Candee and Berry received the same rating on their applications. [*Id.*]. Berry was in her fifties and had worked as a Title II permanent TE in the Columbus, Indiana office. [DE 53 at 582]. Berry had experience training and mentoring. [*Id.*]

Shortly after, Candee requested to Corder that management expand the number of positions being filed from one to two, so that Candee could be placed into a second permanent TE position. [*Id.*] Corder denied the request, stating the service area did not warrant another position. [*Id.*] Candee then made the request to Corder's supervisor, Marisela Orozco-Jaramillo, which was denied on October 2, 2014. [*Id.*, citing Candee Decl. ¶ 9]. Corder had previously doubled positions when hiring Claims Specialists. For example, in 2012 he promoted Katherine Kruer and Scott Rorrer (under age 40) at the same time and in early 2014 Corder promoted Leah Starks and then lateralled Lindsey Chitwood (both under age 40). [*Id.*, citing Exhibit 8 - Defendant's Interrogatory Response No. 13 & Supplement.; Candee Dep. at 61-63].

On October 28, 2014, Candee requested informal EEO counseling on his non-promotion and the actions of his supervisors. [DE 52 at 365, citing Candee Decl. ¶ 10].

On November 5, 2014, Candee received his yearly performance review, known as "PACS." [*Id.*]. Candee disputed several ratings given by his supervisor, Bush, whom he has accused of discriminating against him previously. [*Id.*, citing Candee Decl. ¶ 11; Exhibit 9 - Candee's 2015 PACs].

In December 2014, Candee filed his own EEO complaint against the SSA. [DE 52 at 379, citing Candee Decl. ¶ 8]. An EEO investigation occurred in which Corder, and Bush, Candee's then first line supervisor, provided affidavits. [*Id.*]

**2015**

On or about March 11, 2015, Corder and Bush denied Candee's request for overtime pay which Candee believed conflicted with established policy. [DE 52]. On March 13, 2015, Candee emailed both Corder and Bush and stated, "[s]ince you can't attack my work on quality, you attack me on timeliness. All of which is about my EEOC complaint and has nothing to do with my work." [DE 52, citing Candee Decl. ¶ 12].

In May 2015, both Corder and Bush provided affidavits in response to Candee's 2014 EEO claim. [De 52 at 356, citing affidavits].

In July 2015, Candee learned that Rebecca Carson ("Carson"), then a Title XVI Claims Specialist, would be taking official cross-over training in Title II. [DE 52 at 366, citing Candee Decl. ¶ 13. Candee was not offered cross-over training in Title XVI. [*Id.*]

In August 2015, Candee submitted to Corder a statement of interest for a temporary TE position. [*Id.*] On August 28, 2015, Candee learned LaCoste was selected for the temporary TE position. [*Id.*]

On November 25, 2015, Candee received his yearly performance review from Bush who reduced his scores in the category of Achieves Business Results from 5 to 3. [DE 52]. Bush also accused Candee of having "issues with maintaining productive relationships" [*Id.,* citing Candee Decl. ¶ 15; 2015 PACS].

On or about December 8, 2015, LaCoste became Candee's first line supervisor, replacing Bush. [*Id.*, citing Candee Decl. ¶ 16]. On or about December 22, 2015, LaCoste met with Candee to issue him a Record of Discussion about a work process. LaCoste told Candee that she was investigating him for potential disciplinary action. Candee refused to sign the document and denied any wrongdoing. [*Id.*]

**2016**

In January 2016, the SSA announced a Generalist TE position. [DE 52]. Candee applied. Carson also applied. Carson has worked for as a Claims Specialist since 2011 and transferred to the New Albany office in late 2013. [*Id.*] Carson worked as a Title XVI Claims Specialist. In March 2015, management asked Carson to switch to Title II. [De 52 at 367, citing Carson Application]. Carson was chosen for the position. To Candee's knowledge, the District had never offered a Generalist TE position. [*Id.* citing Candee Dep. at 173; Candee Decl. ¶17]. William Price, Candee's Union Representative, also had never seen a Generalist Claims Representative position advertised as a vacancy in the District. [*Id.* citing Exhibit 12 - Affidavit of William Price ¶ 11A]. Corder testified that he had never advertised for a Generalist TE position before this one. [*Id.,* citing Corder Dep. at 59].

In 2016, Candee instituted this litigation, alleging that the SSA discriminated against him because of his age and retaliated against him because of his involvement in Washington's EEO claim and his own EEO claim. [DE 21, Second Am. Compl.]. In Count 1 he alleges age

discrimination in violation of the Age Discrimination in Employment Act when he was not selected for the 2016 TE position. [DE 21 at 31–34]. In Count 2, Candee alleges retaliation for having participated in protected activities also in violation of the Age Discrimination in Employment Act. [*Id*. at 35–39].

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## III. DISCUSSION

The SSA moves to dismiss Candee's age discrimination claim, arguing he cannot adequately demonstrate the SSA's legitimate, nondiscriminatory reason was pretext. The SSA moves to dismiss Candee's retaliation claim, arguing he cannot show the fourth element of a *prima facia* claim, causation, and that he cannot adequately demonstrate pretext. The Court addresses each claim below.

### 1. Age Discrimination

Candee alleges he was not hired for the 2016 Generalist TE position because of his age.[2] The ADEA makes it unlawful for an employer to "fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623. As in the private sector, age discrimination is prohibited in the federal sector. *See* 29 U.S.C. § 633(a) (all personnel actions in federal employment "shall be made free from any discrimination based on age"). An ADEA plaintiff must carry the burden of persuasion and show that age was the "but-for" cause of the adverse employment action. *Yeschick v. Mineta*, 675 F.3d 622, 632 (6th Cir. 2012); *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177 (2009); *Downs v. Shinseki*, 2013 WL 4401836 (M.D.Tenn.

---

[2] In his Response, Candee only argues his non-selection for the 2016 position resulted from age discrimination and does not argue the same of his non-selection for the 2014 position. He argues his non-selection for the 2014 was retaliation.

Aug.14, 2013); *see also* Black's Law Dictionary 250 (9th ed. 2009) (defining "but-for cause" as "[t]he cause without which the event could not have occurred—[a]lso termed actual cause; cause in fact; factual cause "). "[I]t is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action[.]" *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014).

A plaintiff may support a claim of age discrimination in employment by offering either direct or circumstantial evidence of discrimination. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004); *Lewis-Smith v. Western Kentucky Univ.*, 85 F. Supp. 3d 885, 915–16 (W.D. Ky. 2015). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). This evidence "explains itself" and "does not require the fact finder to draw any inferences to reach the conclusion that unlawful discrimination was at least a motivating factor." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016). Candee does not offer direct evidence of age discrimination.

When a plaintiff seeks to prove intentional discrimination with circumstantial evidence,[3] a three-step burden shifting framework applies, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Id.* At the first step of the *McDonnell Douglas* framework, the plaintiff must present evidence sufficient to establish a *prima facie* case of discrimination. *Id.* at 802. At the second step, once a plaintiff meets his *prima facie* burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 803. If the defendant articulates such

---

[3] Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009).

a reason, at the third step, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretext for unlawful discrimination—that is, "that the [employer's proffered] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515 (1993) (emphasis in original).

### a. Step 1: Prima Facie Case

Under step one, to establish a *prima facie* case of age discrimination based on failure to promote, Candee must show that "(1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied." *White v. Columbus Metro Housing*, 429 F.3d 232, 240 (6th Cir. 2005). Here, Candee is a member of a protected class (he's over age 40), he applied for the Generalist TE position in 2016, for which he was qualified, and yet did not receive the position. The parties do not dispute that the SSA selected Carson for the position instead and that she was an individual of similar qualification who was not a member of the protected class. [DE 46, at 143, n.4 ]. Thus, Candee has established a *prima facie* case.

### b. Step 2: Legitimate, Nondiscriminatory Reason

Under step two, the burden shifts to the SSA to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Upshaw,* 576 F.3d at 585. In examining the proffered reason, "it is inappropriate for the judiciary to substitute its judgment for that of management." *Hedrick v. W. Reserve Care Sys*., 355 F.3d 444, 462 (6th Cir. 2004), citing *Smith v. Leggett Wire Co*., 220 F.3d 752, 763 (6th Cir. 2000).

Here, the SSA offers a legitimate nondiscriminatory reason for promoting Carson over Candee: she was more qualified. [DE 46 at 144]. In her Response, Candee assumes the SSA has

met it burden on this point and does not offer argument or cite the record disputing that the SSA articulates a legitimate, nondiscriminatory reason for the decision. [DE 52 at 371]. Selecting a more qualified candidate constitutes a legitimate, nondiscriminatory reason. *See Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 815 (6th Cir.2011) (deciding "to promote a more qualified candidate" is a legitimate nondiscriminatory justification); *White,* 429 F.3d at 245. Here, SSA's Chicago HR placed Candee and Carson on the SSA Best Qualified list. [DE 52 367]. Carson, however, was more highly rated than Candee by the SSA Chicago HR personnel. [DE 46 at 132]. Carson was the only candidate who received a "highly recommended" designation. [*Id*. at 133]. The Generalist TE position required both Title II and Title XVI expertise. Carson was the only candidate who had training and experience as a Claims Specialist for both Title II and Title XVI. [*Id*.]. Carson received outstanding ratings "in all four elements of her performance plan. The remaining candidates received outstanding ratings in at most two, or the four performance plan elements." [*Id*.]

c. *Step 3: Pretext*

Because the SSA articulates a legitimate nondiscriminatory reason for hiring Carson, the burden shifts to Candee to prove pretext. A plaintiff can prove pretext by showing that the proffered reason (1) is baseless, (2) did not actually motivate the employer's conduct, or (3) is insufficient to warrant the challenged conduct. *White*, 429 F.3d at 245. In a case such as this where an employer fails to promote, a plaintiff can establish pretext by showing that she is (1) "a plainly superior candidate, such that no reasonable employer would have chosen" the other applicant, or (2) is "as qualified as[,] if not better qualified than the successful applicant, **and** the record contains other probative evidence of discrimination." *Provenzano v. LCI Holdings, Inc*., 663 F.3d 806, 815 (6th Cir. 2011)(emphasis added)(internal quotations and citations omitted). Candee seeks to prove

pretext under this last method by showing he was "a plainly superior candidate, such that no reasonable employer would have chosen" [Carson], or that he was "as qualified as[,] if not better qualified than [Carson], and the record contains other probative evidence of discrimination." *Id.*; [DE 52 at 372–74].

Candee asserts the following in support of his argument that "his qualifications relative to Carson's were superior" for the Generalist TE position: 1) He and Carson were both placed on the Best Qualified List ("BQL") for the position as rated by Human Resources in Chicago; 2) He had worked as a Claims Specialist over twenty years when he sought the position; 3) He worked as a temporary TE in 2014 and Carson had not worked as a temporary TE; 4) He was a resource for individuals outside the New Albany office, including Mike McLeod a the Louisville ODAR office. [DE 52 at 371–72]. The SSA does not argue that Candee was unqualified for the position, but that he was no of superior qualification to Carson and was not as qualified, if not more qualified, than Carson. [DE 53 at 575–76].

Despite Candee's points, a reasonable factfinder could not find that Candee was the "plainly superior" candidate, such that no reasonable employer would have chosen Carson or that Candee was "as qualified, if not more qualified," as Carson. The Human Resources in Chicago rated Carson as the best candidate for the job and she was the only candidate to receive a "highly recommended" recommendation. [DE 53 at 575]. The position required expertise in both Title II and Title XVI. Carson was the only candidate with formal training and experience as a Claims Specialist for both Title II and Title XVI.[4] Carson was the only candidate for the position that received outstanding ratings "in all four elements of her performance plan. The remaining

---

[4] Carson came to the New Albany office as a Title XVI Claims Specialist. But the work of the New Albany office is mainly Title II and most of its staff work in Title II. [DE 53 at 576, n.3]. Carson was cross-trained in Title II in 2015. [*Id.*]

candidates received outstanding ratings in at most two, or the four performance plan elements."

[DE 46].  Because Candee was not "plainly superior" so that no reasonable employer would have chosen Carson and was not "as qualified, if not more qualified" as Carson, Candee's age discrimination claim fails.  The SSA's Motion for Summary Judgment is granted as to Count 1 of the Second Amended Complaint.

## 2.  Retaliation

Candee alleges that SSA did not hire him for the 2014 TE position in retaliation for helping Washington with her EEO claim.  He further alleges that the SSA did not hire him for the 2016 TE position in retaliation  for Candee's own EEO claim made at the end of 2014 and his help with Washington's EEO claim.  Section 623(d) of the ADEA prohibits an employer from retaliating against an employee who opposes discrimination prohibited by the Act.  29 U.S.C. § 623(d). Because Title VII's anti-retaliation provision is much like the ADEA's anti-retaliation provision, it is appropriate to look to cases construing Title VII as a source of authority when construing the ADEA's anti-retaliation clause.  *Fox v. Eagle Distrib. Co., Inc*., 510 F.3d 587, 591 (6th Cir. 2007) (citing *Wathen v. General Elec*., 115 F.3d 400, 404 n.6 (6th Cir. 1997) (because liability schemes under Title VII, ADEA, and ADA are functionally the same, court's analysis may properly rely on case law interpreting any of the three acts)).

Plaintiff may establish retaliation "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation."  *Imwalle v. Reliance Medical Products, Inc*., 515 F.3d 531, 543 (6th Cir. 2008).  Without direct evidence of retaliation, courts apply the *McDonnell Douglas* discrimination burden-shifting framework to analyze retaliation claims at the summary judgment stage.  *Blizzard v. Marion Technical Coll*., 698 F.3d 275, 288 (6th Cir. 2012); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir.

2010).    Because Candee offers circumstantial evidence of retaliation, his claim is analyzed under

the *McDonnell Douglas* framework described above.

To establish *prima facie* case of retaliation under Title VII, Candee must show that: 1) he

engaged in a protected activity under Title VII; 2) the defendant knew he engaged in a protected

activity; 3) the defendant later took an adverse, retaliatory action[5] against plaintiff or the plaintiff

faced severe or pervasive retaliatory harassment by a supervisor; 4) the protected activity and the

adverse action are causally connected. *Taylor v. Geithner,* 703 F.3d 328, 336 (6th Cir. 2013).   If

Plaintiff establishes a *prima facie* case of retaliation, the burden shifts to SSA to produce evidence

of a legitimate, nondiscriminatory reason for its actions.  *See Imwalle,* 515 F.3d at 544. Defendant's

burden, at that stage of the process, is one of production, not persuasion, and no credibility

assessment is to be made.  *Reeves v. Sanderson Plumbing Prods*., Inc., 530 U.S. 133, 142 (2000);

*Chattman v. Toho Tenax America, Inc*., 686 F.3d 339, 349 (6th Cir. 2012).   Finally, if the SSA

produces a legitimate, nondiscriminatory reason for its actions, the burden shifts back to Plaintiff

to show by a preponderance of the evidence that the legitimate reason offered was a pretext

designed to mask retaliation.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Plaintiff can meet this burden by showing that: (1) Defendant's stated reason is baseless, (2) the

reason offered was not the actual reason for the adverse action, or (3) the reason offered was

insufficient to explain Defendant's action.  *Imwalle,* 515 F.3d at 545 (citing *Manzer v. Diamond*

*Shamrock Chem.,* 29 F.3d F.3d 1078, 1084 (6th Cir. 1994)).

---

[5] The adverse, retaliatory act must be such that "'a reasonable employee would have found the challenged
action materially adverse, which in this context means it well might have dissuaded a reasonable worker
from making or supporting a charge of discrimination.'" *Randolph v. Ohio Dept. of Youth Services,* 453
F.3d 724, 736 (quoting *Burlington Northern and Sante Fe Railway Company v. White*, 548 U.S. 53, 126
S.Ct. 2405 (2006). "[A] plaintiff's burden of establishing a materially adverse employment action is less
onerous in the retaliation context than in the anti-discrimination context." *Michael v. Caterpillar Fin. Servs.*
*Corp.,* 496 F.3d 584, 595–96 (6th Cir.2007), cert. denied, 552 U.S. 1258 (2008).

### a. Step 1: Prima Facie Case

It is undisputed that Candee's participation in Washington's EEO claim and his own claim are protected activity. It is also undisputed that Corder and Bush were aware of Candee's involvement in Washington's EEO claim and that Corder, Bush, and LaCoste knew of Candee's EEO claim as they each provided affidavits in the investigation of that matter. It is not in dispute that Candee suffered an adverse employment action when he was not promoted as a TE in both 2014 and 2016. Although the SSA and Candee disagree over Candee's alleged denial of mentoring opportunities, reprimand for an alleged error, and dispute over overtime pay rise to the level of adverse action, there is enough adverse action to satisfy the third element of a *prima facie* claim.

The issue is whether Candee can establish the fourth *prima facie* element, *i.e.* that there was a causal connection between his involvement in Washington's EEO matter or his own EEO matter and the adverse employment actions. To establish a causal connection, the plaintiff must offer sufficient evidence that her protected activity was the likely reason for the adverse action. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). In other words, a plaintiff must adduce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not engaged in protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). A causal link can be shown "through knowledge coupled with a closeness in time that creates an inference of causation . . . [h]owever, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Nguyen*, 229 F.3d at 566 (internal quotations omitted). This burden is minimal, and only requires that plaintiff put forth some credible evidence that enables the Court to deduce some causal connection between the protected activity and retaliatory action. *Dixon* at 333.

The Sixth Circuit has found that temporal proximity between a protected activity and a materially adverse action, can establish the causal connection element of retaliation claim "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity." *Mickey v. Zeidler Tool & Die Co*., 516 F.3d 516, 525 (6th Cir.2008); *see also DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) ("[I]n certain distinct cases where temporal proximity between the protected activity and the adverse employment action is acutely near in time, [ ] close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.") *overruled on other grounds by Gross v. FBL Financial Ser.,* 557 U.S.167, 180 (2009). But where some time elapses between when the employer learns of a protected activity and the later adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality. *Mickey,* 516 F.3d at 525. The purpose "for this distinction is simple: if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation." *Id.*

Here, too much time elapsed between when Corder and Bush first learned of the protected activities and the timing of adverse actions to satisfy an inference of retaliation based on temporal proximity alone. Temporal proximity aside, Candee essentially argues that the number of small actions and events considered in combination enable the Court to deduce some causal connection between his protected activity and the adverse actions. The burden to show causation is minimal. Taking all reasonable factual inferences in Candee's favor, he therefore presents sufficient evidence to establish causality to withstand summary judgment.

Candee does not dispute, for summary judgment, that the SSA provides legitimate, nondiscriminatory bases for the adverse actions. [DE 52 at 380]. The final issue is thus pretext. Candee essentially argues that the reason offered was not the actual reason for the adverse actions. *Imwalle,* 515 F.3d at 545 (citing *Manzer,* 29 F.3d at 1084). The Sixth Circuit has observed that finding out the true reason for an employer's actions in the retaliation context often presents "an elusive factual question." *Singfield v. Akron Metropolitan Housing Authority,* 389 F.3d 555, 564 (6th Circuit 2004). Thus, "caution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation through direct or circumstantial evidence." *Id.* (holding that, "though [the plaintiff] may fail at trial to establish his Title VII retaliation claim under the preponderance of the evidence standard, the district court erred in dismissing the Title VII retaliation claim at this stage.") Upon review of the record, and taking all reasonable factual inferences in a light most favorable to Candee, Candee has produced enough evidence so a reasonable fact-finder could conclude the SSA's legitimate, nondiscriminatory reasons were a pretext. For these reasons, the SSA's motion for summary judgment is denied as to Candee's retaliation claim in Count 2 of the Second Amended Complaint.

## IV.    CONCLUSION

Accordingly, for the stated reasons, and being otherwise sufficiently advised, **IT IS ORDERED** that Defendant's Motion for Summary Judgment, [DE 46], is **GRANTED IN PART** and **DENIED IN PART** as set forth above.